05-1537 Venture Industries Corporation v. Autoliv Autoliv ASP has not come close to establishing a likelihood that fraud, misrepresentation, or misconduct occurred during the pretrial that would cause the court to consider a further evidentiary hearing on its B3 claim or granting a new trial on damages. Okay, well let's assume then that we've established that there's fraud and so the prong remaining is whether or not that would have affected it. Would you agree then with the other side that under Jordan and elsewhere it would have your burden therefore to come forward with clear and convincing evidence that it did not affect the trial? That is not the law of the Sixth Circuit. It is, as the court is well aware, the Jordan case is an unpublished decision that creates this burden shifting that does not exist anywhere else in Sixth Circuit authority. In fact, the standard, as the court I'm sure is aware, is that it may have. It may have affected the impact. That is the standard in virtually all the other circuits that have addressed this issue. Well, in our case, as in Frage and Schreiber, we seem to say that we're not going to speculate as to whether it had an effect. If there was B3 misconduct, that may be the end of it. Well, and that is certainly the court has brought to our attention the Schreiber case. And that's what the Schreiber case says. This court is well aware of what the Schreiber case says. Has the court had the benefit of the supplemental filing that we submitted? I don't think we've received anything. It was submitted overnight and by fax. Overnight last night? No, overnight for receipt yesterday and by fax. Well, we don't have it. I'm sorry that you don't. Because I want to discuss why this is not a Schreiber case. It is not a Schreiber case. Before we get on to that, this part that you read from page eight, the district court's opinion strikes me or hurts you because he's saying there's not sufficient misconduct here that would cause the court to consider a further evidentiary hearing. In other words, he's declining to consider the issue of prejudice. That's the way I understand what he's saying. Isn't that a problem for you? It is not because in the first instance, he has concluded, he's concluded two things. At page 63, he concludes that there is no fraud, that there is no misrepresentation, and that there is no misconduct. At page 75, he concludes. And he says after that in the part that you read, I'm not going to hold a hearing. Basically, he's saying on the question of prejudice. Well, that is, I don't read it that way, Judge. He does not say that. Well, even beyond that, this section, in his opinion, I read as dealing with the issue of discovery misconduct. It is the only misconduct that was argued by Ottawa. It's the only misconduct that was argued by Ottawa. But you don't even raise in your response brief, you suggest that this was the main focus, but you're not making an argument that they waived the right to raise this or that it wasn't properly raised below and therefore they can't raise it here, right? Well, discovery misconduct was the only issue that was framed and the only issue that was argued and the only issue that was considered. How do we know that? Is the motion in the appendix? The motion is not in the appendix, but it is in the docket. So you're saying that motion doesn't raise it? Does not raise this issue. The court's question is the first time. We can't resolve that today. I think we ask the parties to submit copies of that motion so we can tell whether it was raised or not. Thank you, Judge. But let me tell you why this is not a Shriver case. This is not a Shriver case because there were no false statements. There were no false statements in this case because in this instance, the audited financial opinion of Deloitte Touche remains a clean opinion. It is not. I don't understand what you're saying. What do you mean? There's no, the financials were admittedly incorrect. No, they were not. They were not. The financials, if you look at appendix 189, if you look at appendix 189, this is the report of Doran Mayhew and this is the reason that, this is a very important point. Doran Mayhew in appendix 189, in the last paragraph, as part of this forensic investigation, we are not engaged to and did not perform an audit for purposes of expressing an opinion in accordance with generally accepted auditing standards. They are not challenging the audited opinion of Deloitte Touche. That is somewhat startling to me. I mean, I thought the whole point of this report is that the financial statements were not correct and in fact they said we can't even tell whether the earlier ones are correct or not because we haven't done a full investigation. No, that is not what the, that is not what Doran Mayhew says. And if I could draw the court's attention to appendix 185, where it treats precisely what is at issue, and it is a very narrow point, and it's the first paragraph at the top, second sentence, the work we performed included the process of identifying related party transactions and investigating the nature of each transaction in order to determine whether the transaction was considered on no less favorable terms to the debtor than would be obtained if the transaction were an arms-length transaction for the non-affiliated entity. I just want to make this point. The related party transactions were fully disclosed in the audited financial statements in the opinion of Deloitte Touche. And you can see appendix 939 is for an example of that. Well, I mean, focusing back to your brief, it seemed to me, and maybe I misread it, I mean, I'm not understanding. On page 53 of your brief, you're discussing the audited consolidated financial of venture holdings for 96 to 2001. Yes. And I think, I read it as, that's what we're talking about here, is being the problematic document. And your answer was, not these documents were fine and there was nothing wrong with them, but trying to argue that Mr. Levko really didn't rely on them. No, and actually. So what am I clear in, if you look at page 56 of our brief, the footnote, and actually we mentioned it earlier, as noted super, the audited financials of venture holdings for 1996 to 2001 still carried an unqualified opinion from Deloitte Touche. What does that mean? It means they have not withdrawn their opinion, Judge. And the reason they have not withdrawn their opinion is that they haven't redone the financial statements. That's clear enough, but haven't they said that the financial statements are inaccurate? No, they haven't. Judge, when you say they, Doran Mayhew has not said that. Doran Mayhew hasn't. Hasn't the company said that the financial statements are inaccurate? Didn't they advise the SEC that the statements were inaccurate and they couldn't be relied on? If you will look at the AK, Judge, and that is appendix 590. And let's start at the beginning. After listing the parties, it begins about the middle of the paragraph. The debtors and the official committee of unsecured creditors of in the bankruptcy court against Larry J. Wynja. This AK is filed in connection with the announcement of a lawsuit. And this is a very significant point because the preceding bulk of the AK then simply lists the allegations in the lawsuit. When we get to the language that you're focusing on, Judge, which is on page 592, in the first full unnumbered paragraph, the last sentence, it says, in light of the information contained in the Doran Mayhew report, it appears that the financial information previously publicly reported is unreliable. But let's go back to the Doran Mayhew report. We shouldn't believe them? No, Judge, you should believe them. But you should believe them only with respect to what they opined on. And let me tell you what that is. At page... But here's the company saying it appears that financial information previously publicly reported by venture holdings as far back as 1998 is unreliable and should not be relied on. I mean, are we not supposed to believe what the company says about its own audited financial statement? Judge, what we are to believe is that it appears in light of the Doran Mayhew report. Now, we've got to go back to the Doran Mayhew report. What does the Doran Mayhew report say in its conclusions? And I would draw the court's attention to paragraph or to page 187. This is the appendix. Sub G, last sentence. In conclusion, we have quantified the results of our findings and make a recommendation as to a potential claim against the affiliated entity or outsider. Look at the block on page 190, above the signature block. Above the signature block on 190. This report is intended to be used solely by the Venture Board of Directors in connection with our forensic investigation of venture holdings, LLC transactions with affiliated entities and signers and in support of any further litigation asserting the claims identified within our report. This report focuses on identifying lost claims. Okay, but let's assume hypothetically. I think we grasp your point about this. Let's assume hypothetically that we reject it and we say that the financial statements were false. Why don't we have to send it back to Judge Cohen to consider the issue of prejudice under B3? Because the court has already found in its opinion at page appendix 75, it has already found precisely the point that I made just a few moments ago. And which page of the opinion is that? I'm sorry, that's page 21 of the opinion, Judge. Now the paragraph at the top of the page, the last sentence. And this is quite significant because it picks up on precisely the point I was just making as taken from the Dorn-Mahe report. The March 10th Dorn-Mahe report disclosed not mismanagement of financial accounts of venture, but rather overreaching by venture's principal stockholders. Nothing in this report casts any doubt on the financial accounts of the Grand Rapids facility. And here is his point. Wait a minute. But that's talking about the March 10th Mayew report. And if you keep reading, the next paragraph says, while the March 25th Mayew report casts some doubt on the financial account. Judge, and the reason that I was focusing on the March 10 report is it is the March 10 report that I read from just a few moments ago that appears at appendix 189 and 190. But let me ask, didn't the judge conclude that there was evidence that there was some doubt on the financial account at the Grand Rapids facility? He's talking about the unaudited statements, Judge. The March 25th report relates to the subsequent examination of the unaudited statements where there are some inventory and payables issues. And he treats those extensively in his opinion. The March 10th report, the court concludes, it doesn't talk about the integrity of the financial information. And this is quite important because Mr. Levko's testimony at trial was only that I took comfort that there was an audited financial opinion, that there was an unqualified opinion out there. He says, I didn't rely on them to develop the information about what happens at the Grand Rapids facility. And this is exactly what the court is saying here. It's saying there's a disconnect. Even if you accept that there are related party transactions, meaning the company's profits would have been higher, it doesn't tell me anything about the Grand Rapids facility. And why is that? Because the consolidated audited financials consolidate 10 different entities. This case turns on one plant and one company. The audited financials are entirely attenuated from the analysis that was done in this case. And I'd like to make one other point. The court said and found the financial statements in the March 25th that are subject to the March 25th report. You're out of time. Why don't you try to wrap it up? You can finish your point. Thank you. The court made the point that the plant financial statements were not the source of Mr. Levko's analysis. In fact, he uses the words at page 64 of the appendix that the data that he used was raw data that was specific and reliable. And the point is this. The plant-wide data included not only the subject of the lawsuit, which is these little airbag covers, but bumpers, which are 66% of the plant production. There is a disconnect between using any plant-wide information and trying to figure out what your damages are on airbag covers. There is a further attenuation when you take this plant information and roll it into 10 companies in a consolidated report. Getting back to Judge Cohn's... Okay, I think that's about enough. Thank you, Mr. Green. I actually should ask Judge Loon if he has any questions here. No, I have nothing further. Thank you. Thank you very much, Your Honor. Responding to the court's question as to whether we argued beyond discovery misconduct in B-380. The answer, as I said in my opening argument, is yes. Is the place to find that in the motion? The place to find it, I think, most clearly is at 491 of the docket, which is a supplemental brief that was submitted after the April 29th hearing. And it's identified at page A51 of the transcript, Your Honor. It's that brief that I think most clearly capsulizes the argument that was advanced to the court. What page is this again? It's at page A51 of the appendix, Judge, and it's docket entry 491. It's the last item on that page of the appendix. Why don't you supply us with a copy of that document? I'd be happy to, Your Honor. The only other point I would like to make is, as the court's questions indicated, there are two categories of financial documents as to which there were misstatements. The audited financial statements of the entity as a whole and the ground-blank statements. Our position on the audited financial statements is once the company advised the SEC that they're unreliable, we think any argument as to their reliability after that lacks merit. As to the ground-blank financial statements, which Mr. Levko used up to and including June 2003, the record itself establishes that not only were they false, as Doren Mayhew indicated, that subsequent to the trial, venture restated those financials. Those are the unaudited financials, and that's at appendix 819. I have nothing further to add unless the court has additional questions. No. Why don't counsel, does Judge Lynn have anything? Thank you. Nothing further. Okay. If counsel could just remain seated for one moment. I'm subject to objection from Judge Lynn. We'd like the parties to submit supplemental briefs two weeks from today, no more than 10 double-spaced pages in length, limited to a single question, and that is, for purposes of B3, what is the standard for prejudice under Sixth Circuit law? I think you should include in that the question of whether we can properly consider under our rules the Jordan case since it's unpublished. Okay. Thank you both. Two weeks from today. Is that all right with Judge Lynn? Yeah, that's fine. Okay. Thank you.